STATE of Wisconsin, Plaintiff-Appellant,

v.

CITY OF LA CROSSE and Paul Hemker, and others,
Defendants-Respondents.†

Court of Appeals

*No. 83–435. Submitted on briefs April 6, 1984.—
Decided July 6, 1984.*
(Also reported in 354 N.W.2d 738.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Shari Eggleson,* assistant attorney general.

For the defendants-respondents the cause was submitted on the brief of *Terence R. Collins* and *Cameron, Nix, Collins & Quillin, Ltd.* of La Crosse.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J. The state appeals from an order which granted Paul Hemker's motion in limine to exclude evidence and granted his motion for summary judgment dismissing the complaint against him. The state alleged that Hemker had placed fill within the La Crosse River flood plain which would cause an increase greater than 0.1 foot in the height of the regional flood,[1] contrary to sec. 15.03(B)(1) of the flood plain zoning ordinance of the City of La Crosse. The trial court held that because Hemker's property was outside the area designated as floodway on La Crosse's official flood plain zoning map,[2]

---

[1] Wis. Adm. Code sec. NR 116.03, provides in part:

(11) *FLOOD PLAIN.* The flood plain is the land which has been or may be hereafter covered by flood water during the regional flood. The flood plain includes the floodway and the flood fringe.

. . . .

(24) *REGIONAL FLOOD.* The regional flood is a flood determined to be representative of large floods known to have generally occurred in Wisconsin and which may be expected to occur on a particular stream because of like physical characteristics. The regional flood is based upon a statistical analysis of streamflow records available for the watershed and/or an analysis of rainfall and runoff characteristics in the general watershed region. The flood frequency of the region flood is once in every 100 years; this means that in any given year there is a 1% chance that the regional flood may occur. During a typical 30-year mortgage period, the regional flood has a 26% chance of occurring.

[2] Wis. Adm. Code sec. NR 116.03, provides in part:

(15) *FLOODWAY.* The floodway is the channel of a river or stream and those portions of the flood plain adjoining the channel

the state could introduce no evidence which was based on an assumption that at the time of the regional flood, the water on Hemker's property would be flowing instead of standing. We reverse the trial court's order, direct the trial court to deny Hemker's motion in limine, and remand the case for further proceedings consistent with this opinion.

Section 15.03(B)(1) of the La Crosse City Ordinances, which is part of La Crosse's flood plain zoning ordinance, provides in part:

> No developments shall be allowed which, acting alone or in combination with existing or future similar uses, cause an increase equal to or greater than 0.1 foot in height of the regional flood on any main stem, tributaries to the main stem of any stream, drainage ditches, or any other drainage facilities. . . .

Section 87.30(2), Stats., provides that any "structure, building, fill or development placed or maintained within any flood plain" in violation of a flood plain zoning ordinance is a public nuisance, and that the state, any municipality, or any citizen may bring an action to enjoin or abate it.

In March 1981, La Crosse annexed a parcel of land which was owned by Hemker. The parties agree that the parcel is located within the flood plain of the La Crosse

---

required to carry and discharge the flood water or flood flows associated with the regional flood.

. . . .

(18) *HYDRAULIC FLOODWAY LINES.* Hydraulic floodway lines shall delineate the channel of the river or stream and those portions of the adjoining flood plains which are reasonably required to carry and discharge the regional flood flow without any measurable increase in flood heights.

. . . .

(22) *OFFICIAL FLOODWAY LINES.* Official floodway lines are those lines which have been adopted by the county, city or village, approved by the department, and which are shown on the official flood plain zoning maps and used for regulatory purposes.

River. The state, believing that La Crosse had erroneously zoned the parcel as being in the flood fringe[3] when it was actually in the floodway, attempted to enjoin Hemker from filling the parcel and requested forfeitures for any illegally placed fill.[4] The trial court refused to enjoin Hemker from filling. On April 19, 1982, the state filed an amended complaint alleging that Hemker had placed fill on the property which would increase the elevation of the regional flood by more than 0.1 foot, contrary to sec. 15.03(B)(1) of the La Crosse City Ordinances. Hemker filed a motion in limine to prevent the state from introducing evidence that his fill would increase flood elevations more than 0.1 foot if the evidence was based on a hydraulic analysis, rather than a hydrologic analysis, of the effects of the fill.

The parties agree that if Hemker's property is within the hydraulic floodway, floodwaters will be flowing across the property at the time of the regional flood, and any fill placed on the property will obstruct the flow of the water. If this is the case, a hydraulic analysis, which assumes flowing water, must be done in order to accurately determine the effect of the fill on flood elevations.

---

[3] Wis. Adm. Code sec. NR 116.03, provides in part:

(10) *FLOOD FRINGE.* The flood fringe is that portion of the flood plain outside of the floodway, which is covered by flood waters during the regional flood; it is generally associated with standing water rather than rapidly flowing water.

[4] The state also attempted to enjoin other individuals who owned property which it believed was within the floodway and who had obtained permits to fill or develop their property from proceeding under the permits. It also requested an injunction ordering La Crosse to upgrade its flood plain zoning ordinance to reflect the results of the DNR's most recent study of the La Crosse River flood plain. The complaint was dismissed as to all parties excepting Hemker. The question of the amendments to La Crosse's flood plain zoning ordinance is the subject of our decision in *City of La Crosse v. Department of Natural Resources,* No. 83–733, 83–734, 83–735 slip op. (Wis. Ct. App. June 26, 1984).

The state alleges that Hemker's fill is within the hydraulic floodway and that a hydraulic analysis of the fill shows that it will increase flood elevations approximately three feet.

If, on the other hand, Hemker's property is not within the hydraulic floodway, but is in the flood fringe, then water will most likely be standing on the property at the time of the regional flood. If this is the case, any fill placed on the property will merely displace standing floodwaters, and thereby decrease the storage capacity of the flood fringe. The parties agree that if the water is standing on Hemker's property instead of flowing over it, a hydrologic analysis, which assumes standing water, must be done to determine the effect of the fill on flood elevations. The parties also agree that a hydrologic ananalysis of Hemker's fill will show that the fill would have no significant impact on the flood storage capacity of the flood plain and thus no significant impact on flood elevations.

The trial court held that because La Crosse's flood plain zoning map indicated that Hemker's property was part of the flood fringe,[5] which is defined in the ordinance as being associated with standing water, the state could not introduce into evidence the results of its hydraulic analysis, which had assumed floodwater would be flowing over the property. The state conceded that without the hydraulic analysis, it had no evidence to show that Hemker's will would increase the elevation of the regional flood more than 0.1 foot. The other facts were undisputed. The trial court granted summary judgment for Hemker and dismissed the complaint.

---

[5] The state argues that the floodway limit which appears on La Crosse's flood plain zoning maps in the area of Hemker's property, and which was relied upon by the trial court, was not validly adopted. We need not address that question because the validity of La Crosse's flood plain map is irrelevant to our decision in this case.

The questions whether an offered item of evidence is relevant, and, if it is, whether it should be admitted, are addressed to the trial court's discretion. *State v. Pharr,* 115 Wis. 2d 334, 344–45, 340 N.W.2d 498, 502 (1983). The trial court abuses its discretion, however, when it grounds its decision upon an erroneous view of the law. *Krolikowski v. Chicago & N. W. Trans. Co.,* 89 Wis. 2d 573, 581, 278 N.W.2d 865, 868 (1979).

The trial court excluded the results of the hydraulic analysis on the theory that drawing the boundary between the floodway and the flood fringe was a political decision, not a scientific decision, and that if the official (political) floodway line was not in the same place as the hydraulic (scientific) floodway line, the official line should be the one that determines whether fill may be placed on the flood plain. This was an erroneous view of the law. Section 87.30(1)(a), Stats., and Wis. Adm. Code ch. NR 116, indicate that flood plain regulation and use are to be based on the most accurate assessment possible of actual physical conditions.

Section 87.30(1)(a), Stats., provides that if the DNR adopts a flood plain zoning ordinance applicable to a municipality, the flood plain and floodway limits are to be determined by hydraulic and engineering studies, and that the DNR must ensure that the studies are "reasonable and accurate." Wis. Adm. Code ch. NR 116, provides that local governments must upgrade their flood plain zoning ordinances to reflect the most current flood data, hydrologic data, and technological information and methods.[6] Section NR 116.06 provides that municipalities'

---

[6] Wis. Adm. Code sec. NR 116.05(2), providing that "Where necessary to insure the effectiveness of flood plain zoning ordinances, the standards of this chapter shall be included in subdivision regulations . . . and other related programs," must be read in conjunction with sec. NR 116.06, which requires use of "the best available data" and sec. NR 116.10 which requires maps be "related to actual field elevations."

flood plain zoning maps must "[reflect] the best available data." Section NR 116.10 provides that accepted engineering principles are to be used in delineating flood plain limits on flood plain zoning maps, and that when the maps conflict with actual field conditions, the elevations from the water surface profile[7] "as related to actual field elevations" are to govern placement of the official flood plain boundaries. These statutory and regulatory provisions establish that the overriding concern regarding flood plain regulations is where the floodwaters will be and what they will do at the time of the regional flood.

Wis. Adm. Code sec. NR 116.11(1), provides in part: "As a general rule, the official floodway line shown on the flood plain zoning maps shall be the hydraulic floodway lines." Hemker argues that this section means the court must assume that a municipality's official floodway line is on the hydraulic floodway line unless the ordinance indicates otherwise. He argues that the trial court could not admit evidence which tended to indicate that the official floodway line was in fact closer to the river than the hydraulic floodway line. We disagree and conclude that sec. NR 116.11(1) indicates only that a municipality should place its official floodway lines on the hydraulic floodway lines when it adopts a flood plain zoning ordinance. It does not indicate that a court must assume that a municipality actually did so, in the face of evidence that it did not.

---

[7] Wis. Adm. Code sec. NR 116.03, provides in part:

(31) *WATER SURFACE PROFILE.* The water surface profile is a graphical representation of the height of the water surface throughout a county, city or village based upon a certain flow passing through the river or stream. A water surface profile based upon flows occurring during a regional flood is used in regulating the flood plain areas.

The approach urged by Hemker, and adopted by the trial court, disregards the purposes of flood plain zoning: to protect human lives and health, and to minimize property damage and economic loss resulting from floods. *See* Wis. Adm. Code sec. NR 116.01. The essential question in a prosecution under a flood plain zoning ordinance such as sec. 15.03(B)(1) is what effect the challenged fill or development will actually have on flood elevations. Flood plain zoning focuses upon where water goes and what it does. Political considerations are irrelevant to this focus. The trial court did not allow the state to show what the actual effect of allowing Hemker's fill to remain in place was likely to be. Its reliance on the location of La Crosse's official floodway line was error, because the location of the official line is not determinative of the effect Hemker's fill will actually have on flood elevations. The trial court erred by excluding the results of the state's hydraulic analysis.

*By the Court.*—Order reversed and cause remanded, with directions, for proceedings consistent with this opinion.