Peggy A. NELSON, and Liberty Mutual Insurance Company, Plaintiffs-Respondents,

v.

Dale S. ZEIMETZ, Defendant,

DAIRYLAND INSURANCE COMPANY, Defendant-Appellant,

KENOSHA AUTO TRANSPORT CORPORATION, Defendant,

PROTECTIVE INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals

*No. 88-0737. Argued April 13, 1989.—Decided May 10, 1989.*

(Also reported in 442 N.W.2d 530.)

788

On behalf of defendant-appellant Dairyland Insurance Company, there were briefs by *Robert F. Johnson* and *Philip C. Reid* of *Cook & Franke, S.C.* of Milwaukee. There was oral argument by *Philip C. Reid.*

On behalf of defendant-appellant Protective Insurance Company, there were briefs and oral argument by *Douglas J. Carroll* of *Arnold, Murray, O'Neill & Schimmel* of Milwaukee.

On behalf of plaintiff-respondent Liberty Mutual Insurance Company, there was a brief by *James J. Kriva* and *E. Patrick Cranley* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee. There was oral argument by *James J. Kriva.*

On behalf of plaintiff-respondent Peggy A. Nelson, there was a brief and oral argument by *Edward J. Plagemann* of Milwaukee.

On behalf of the Department of Transportation, there was an amicus brief by *Donald J. Hanaway,* attorney general, and *Donald W. Smith,* assistant attorney general. There was oral argument by *Donald W. Smith,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. Dairyland Insurance Company (Dairyland) and Protective Insurance Company (Protec-

tive) appeal from an order which granted the plaintiffs' motion to strike the insurance companies' defense of non-permissive use of a vehicle.[1] Dairyland and Protective raise a number of issues regarding part of Wisconsin's safety responsibility law, sec. 344.15, Stats. We conclude that Dairyland, as insurer of the operator of the vehicle, is not subject to estoppel under sec. 344.15(5), and therefore we reverse the order as to it. We also reverse the order as to Protective for evidentiary reasons.

## FACTS

A vehicle owned by Kenosha Auto Transport Corporation (KAT) and driven by Dale Zeimetz, its employee, struck Peggy Nelson's husband on December 20, 1985, fatally injuring him. Zeimetz was insured by Dairyland; KAT is insured by Protective.

On January 7, 1986, Zeimetz filed an accident report known as an SR–21 with the Department of Transportation (the department) as required by sec. 346.70, Stats. On January 7, the department mailed a copy of the SR–21 to Dairyland. On January 14, Dairyland notified the department that its policy was inapplicable due to a violation of the purposes of use specified in the policy.

According to a document from the department, a copy of the SR–21 was mailed to Protective on April 1, but no response was received. Later that month, Nelson brought a wrongful death action against Zeimetz, KAT, and their insurers.[2] The complaint alleged that Zeimetz was operating the vehicle with permission of the owner,

---

[1] We granted Dairyland's and Protective's petitions for leave to appeal a nonfinal order on May 19, 1988.

[2] The worker's compensation carrier for the deceased, Liberty Mutual Insurance Company, is also a plaintiff. However,

KAT. Dairyland and Protective denied this and raised the affirmative defense of lack of permission.

Nelson filed motions to strike these defenses on the ground that neither Dairyland nor Protective properly corrected the SR–21 as required by sec. 344.15, Stats. The trial court characterized the motions to strike as motions for judgment on the pleadings and concluded that, because matters outside the pleadings were to be considered, the court would treat them as summary judgment motions. *See* sec. 802.06(3), Stats. The trial court gave Dairyland and Protective two months to present evidentiary material.

Nelson's proof in support of summary judgment against Dairyland consisted of the SR–21 form which Dairyland had returned to the department after checking the box related to "purposes of use." As against Protective, Nelson provided a document from the department which "certified" that an SR–21 had been sent to Protective and that no response was received. Protective filed a counteraffidavit prepared by its assistant vice president of claims. This counteraffidavit averred that Protective had no record of receiving the SR–21, and that those employees who would reasonably be expected to know of its receipt had no recollection thereof.

The trial court ruled that both Dairyland and Protective were estopped from raising the defense of non-permissive use. The trial court concluded that Dairyland's "purposes of use" response was inadequate because sec. 344.15(4), Stats., requires the filing of an affidavit if non-permissive use is to be raised.

Regarding Protective, the trial court ruled, over objection, that the letter from the department was admissible, being self-authenticating under sec.

since Nelson's and Liberty Mutual's positions are identical, we will refer to them collectively as "Nelson."

791

909.02(4), Stats., and excepted from the hearsay rule by sec. 908.03(10), Stats. The trial court then *sua sponte* excluded Protective's counteraffidavit on the basis that it was "a compilation of hearsay information provided by unnamed informants."

Dairyland and Protective petitioned this court for leave to appeal. We granted the petitions.

## MOTION REGARDING

## DAIRYLAND'S DEFENSE

Dairyland raises numerous issues, including the constitutionality of sec. 344.15, Stats. We need not address the constitutional issue because we find persuasive Dairyland's argument that insurers of operators are not subject to the "non-permissive use" portions of the statute.

The meaning of a statute is a question of law, and we owe no deference to the trial court's decision. *Suburban State Bank v. Squires,* 145 Wis. 2d 445, 448, 427 N.W.2d 393, 394 (Ct. App. 1988). Section 344.15, Stats., reads in pertinent part as follows:

> **(4)** After receipt of the report of an accident of the type specified in s. 344.12, the secretary may forward to the insurer named therein, that portion of the report or other notice which pertains to an automobile liability policy or bond. The secretary shall assume that an automobile liability policy or bond as described in this section was in effect and applied to both the owner and operator with respect to the accident unless the insurer notifies the secretary otherwise within 30 days from the mailing to the insurer of that portion of the report or other notice pertaining to the automobile liability policy or bond . . .. As

respects permission to operate the vehicle, the insurer may correct the report or other notice only if it files with the secretary within the 30-day period specified in this subsection an affidavit signed by the owner stating that the operator did not have the owner's permission to operate the vehicle . . ..

(5) Nothing in this chapter shall be construed to impose any obligation not otherwise assumed by the insurer in its automobile liability policy or bond except that if no correction is made in the report or other notice within 30 days after it is mailed to the insurer, the insurer . . . is estopped from using as a defense to its liability the insured's failure to give permission to the operator . . ..

Dairyland emphasizes the portion of sec. 344.15(5), Stats., which states that "the insurer . . . is estopped from using as a defense to its liability the insured's failure to *give* permission to the *operator.*" (Emphasis added.) Here, Dairyland points out, its allegation is that its insured failed to *obtain* permission from the *owner.* We agree with Dairyland that the plain meaning of the statute does not provide for estoppel in the latter situation.

Nelson responds by pointing out the language of subsec. (4), which is admittedly somewhat broader. However, this subsection is related only to the ministerial function of the insurance commissioner. *Hain v. Biron,* 26 Wis. 2d 377, 379, 132 N.W.2d 593, 594 (1965). The only subsection which places liability on the insurance company for failure to respond is subsec. (5). *Id.* at 380, 132 N.W.2d at 594–95.

The plain meaning of the statute is also in accord with common sense and with the department's own

793

interpretation of the statute as evidenced by the SR–21. From a commonsense standpoint, we note that if the insured of the operator (here, Dairyland) were required to file an affidavit of non-permission, it would have to obtain such an affidavit from the owner (here, KAT). The owner in such a situation would not be bound by any duty to cooperate with an insurance company with which the owner has no legal relationship. Even if the operator's insurer made a reasonable attempt to obtain an affidavit of non-permission from the owner, a serious question arises as to whether such "substantial compliance" would be sufficient. *See Midwest Mut. Ins. Co. v. Nicolazzi,* 138 Wis. 2d 192, 196–202, 405 N.W.2d 732, 734–37 (Ct. App. 1987).

From the standpoint of the department, it has prepared an SR–21 which allows insurers to check off any of a number of policy rejections listed on the form prior to returning it to the department. The only rejection on the SR–21 dealing with non-permissive use reads as follows: "Our policy applies to the owner of the vehicle involved in the accident, but not to the operator who was driving without permission (Affidavit of Owner attached . . .)." This rejection does not anticipate use by the insurer of the operator.

Finally, both parties dispute the meaning of *Duveneck v. Western Casualty & Surety Co.,* 56 Wis. 2d 479, 202 N.W.2d 1 (1972). *Duveneck* involved an insurer of an operator who was in a similar position to Dairyland. *Id.* at 481–82, 202 N.W.2d at 2. The very brief opinion decides only that the insurer was not an excess carrier, with a caveat that discussion of any other issues would be advisory. *Id.* at 485–86, 202 N.W.2d at 4. The opinion does not address the issue here raised by Dairy-

land, nor does *Duveneck* state that such an issue was raised therein. We therefore conclude that *Duveneck* does not represent binding authority on the issue before us.

We conclude that sec. 344.15(5), Stats., does not estop Dairyland, as insurer of the operator, from raising the defense of non-permissive use. The order granting Nelson's motion as to Dairyland is reversed.

## MOTION REGARDING

## PROTECTIVE'S DEFENSE

Protective also raises numerous issues, including constitutional arguments and an extensive argument that excess carriers are exempted from sec. 344.15, Stats. We conclude that Nelson's proof, consisting of a letter from the department, was insufficient to establish a prima facie case for summary judgment. We recognize that this may appear to be a hypertechnical issue upon which to reach a decision, particularly when several of the issues appear to be of great moment. Nonetheless, we do so for the following reasons.

The trial court was very concerned over Protective's allegations that it had not received the SR–21 from the department, thereby raising further concerns regarding due process. The trial court also indicated that if the issue of Protective's non-receipt were adequately raised, it would hold an evidentiary hearing. Unfortunately, we do not have the benefit of such a hearing because the trial court ruled that Protective's affidavit was hearsay and did not adequately raise the issue.

The trial court's decision to grant summary judgment was thus based upon a technical and evidentiary

issue, very similar to the issue upon which we now feel compelled to reverse. We recognize that there is a possibility of many of Protective's same arguments coming before us upon an appeal from a final judgment.[3] Regardless, error is error, particularly when it has been objected to in the trial court, has been argued before us, and has resulted in a disfavored grant of summary judgment. Only if statutory procedures have been followed and statutory affidavits have been filed can a litigant be deprived of the constitutional right to try the issues of fact. *Village of Fontana-on-Geneva Lake v. Hoag*, 57 Wis. 2d 209, 214, 203 N.W.2d 680, 682 (1973). With this preface in mind, we turn to the determinative issue.

The letter from the department is the only evidence in the record on the question of the SR-21 form being mailed to Protective. It is the date of mailing which triggers the thirty-day period for an insurer to respond. Sec. 344.15(4), (5), Stats.

The letter can be broken into three parts: (1) a statement that the original SR-21 was filed with the department by Zeimetz, (2) a statement that a copy of the SR-21 was mailed to Protective on April 1, 1986, and (3) a statement that the department's files do not contain a rejection of policy coverage from Protective. The first part is irrelevant for our purposes; the second deals with a public record; the third deals with the absence of something in a public record.

A signature and title (Director of the Bureau of Driver Licensing) appear on the letter. The letter is not notarized, nor does it bear a seal of a public officer. The letter was attached to an affidavit by Nelson's attorney.

---

[3] Equally possible is the prospect of Protective successfully surviving another summary judgment motion, obliterating a need for an appeal on the issues now raised here.

Protective objected to this letter at different times on the bases of hearsay and authentication. The trial court ruled that it was self-authenticating under sec. 909.02(4), Stats., and that it was an exception to the hearsay rule under sec. 908.03(10), Stats.

■

Evidentiary facts set forth by affidavit for summary judgment must meet the conditions of admissibility. *Gordon v. Milwaukee County,* 125 Wis. 2d 62, 71–72, 370 N.W.2d 803, 808 (Ct. App. 1985); sec. 802.08(3), Stats.[4] The rules governing authentication and hearsay represent separate conditions precedent to the admissibility of evidence. *See* secs. 909.01, 908.02, Stats. Compliance with the requirements for one does not obviate the need for compliance with the other.[5] *See* Fed. R. Evid. 803, Advisory Committee's Note; Fed. R. Evid. 901(b), Advisory Committee's Note.[6]

---

[4] Section 802.08(3), Stats., requires that affidavits "shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence." Here, even if Nelson's attorney had "personal knowledge" of the letter, the letter itself must be admissible. *See Gordon v. Milwaukee County,* 125 Wis. 2d 62, 71–72, 370 N.W.2d 803, 808 (Ct. App. 1985).

[5] For this reason, we need not address Nelson's contention that sec. 908.03(24), Stats., applies.

[6] The above cited materials state:

The [hearsay] exceptions are phrased in terms of nonapplication of the hearsay rule, rather than in positive terms of admissibility, in order to repel any implication that other possible grounds for exclusion are eliminated from consideration.

. . ..

It should be observed that compliance with requirements of authentication or identification by no means assures admission of an item into evidence, as other bars, hearsay for example, may remain.

We examine the authentication question first. Section 909.02(4), Stats., under which the trial court found compliance, reads as follows:

**909.02 Self-authentication.** Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

. . ..

(4) CERTIFIED COPIES OF PUBLIC RECORDS. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, *by certificate complying with sub. (1), (2) or (3)* or complying with any statute or rule adopted by the supreme court. [Emphasis added.]

While we are not convinced that the department's letter can be characterized as a "certified copy," such a determination is not necessary. The letter does purport to "certify" certain facts. However, sec. 909.02(4), Stats., also requires an accompanying certificate which meets the "public document" requirements of subsecs. (1), (2) or (3). Even if the letter is not a "certified copy," it would have to meet the requirements of subsecs. (1), (2) or (3) to be admissible as a self-authenticating public document.

Disregarding subsec. (3) which deals with foreign documents, we look to sec. 909.02(1) and (2), Stats. These subsections provide for self-authentication under the following circumstances:

(1) PUBLIC DOCUMENTS UNDER SEAL. A document bearing a seal purporting to be that of the United States, or of any state . . . or of a

political subdivision, department, officer or agency thereof, and a signature purporting to be an attestation or execution.

**(2) PUBLIC DOCUMENTS NOT UNDER THE SEAL.** A document purporting to bear the signature in his official capacity of an officer or employe of any entity included in sub. (1), having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employe certifies under seal that the signer has the official capacity and that the signature is genuine.

To meet the requirements of either of these subsections, a seal is required. Under subsec. (1), the seal appears on the document itself. Under subsec. (2), it appears on a separate document which certifies under seal the authenticity of the first document. The department's letter bears no seal, nor is it accompanied by a certificate under seal.

■■■ Generally, questions of admissibility of evidence are left to the discretion of the trial court. *State v. City of La Crosse,* 120 Wis. 2d 263, 268, 354 N.W.2d 738, 740 (Ct. App. 1984). However, an error of law constitutes an abuse of discretion. *See id.* Here, the trial court made such an error of law when it held the letter to be self-authenticating despite the lack of a seal.

■■■ The trial court's conclusion that the letter fell within the hearsay exception of sec. 908.03(10), Stats., was also an error of law. Section 908.03(10) states that the following is not excluded:

**(10) ABSENCE OF PUBLIC RECORD OR ENTRY.** To prove the absence of a record, report, statement, or data compilation, in any form, or the

nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, *evidence in the form of a certification in accordance with s. 909.02, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry.* [Emphasis added.]

In the case before us, neither a certificate under seal exists nor direct testimony regarding a diligent search. As such, the third part of the letter, regarding the lack of a response from Protective, does not fall within the statutory exception for hearsay.

The inadmissibility of the department's letter results in a complete failure of the proof necessary to show that Protective failed to respond to the SR–21 and thus is estopped from raising the defense of non-permissive use. Because Nelson failed to establish a prima facie case, we reverse for the reasons stated earlier and remand for further proceedings not inconsistent with this opinion.

*By the Court.*—Order reversed and cause remanded.