Lois M. NISCHKE, Plaintiff-Appellant-Cross-Respondent,††

v.

FARMERS & MERCHANTS BANK & TRUST, and General Casualty Co. of Wisconsin, Defendants-Respondents-Cross-Appellants.†

Court of Appeals

*No. 93–2634. Submitted on briefs May 10, 1994.—Decided August 16,1994.*

(Also reported in 522 N.W.2d 542.)

††Petition to review denied.
†Petition for cross review denied.

MYSE, J., dissents.

On behalf of plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *D. J. Weis* of *Johnson, Weis, Paulson & Priebe, S.C.* of Rhinelander.

On behalf of defendants-respondents-cross-appellants, the cause was submitted on the briefs of *Thomas N. Harrington* and *Alexander T. Pendleton* of *Cook & Franke, S.C.* of Milwaukee.

On behalf of Wisconsin's Environmental Decade as amicus curiae, a brief was submitted by *Lawrence Classen* of Madison.

On behalf of Wisconsin Bankers Association as amicus curiae, a brief was submitted by *John E. Knight* and *James E. Bartzen* of *Boardman, Suhr, Curry & Field* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Lois Nischke appeals the reduction of her $250,000 property damage award. The award was to compensate her for damages she suffered when gasoline leaked from an underground storage tank on her property contaminating her soil and water. The court found the award contrary to law and reduced it to reflect the lesser of the cost of repair or the property's diminished value. For reasons explained herein, we reverse and remand for a new trial. However, we conclude that because Nischke is legally obligated to incur the costs of removing the hazard on her property, on retrial she may recover for those costs even though they exceed the property's diminished value.

Farmers & Merchants Bank & Trust (the bank) cross-appeals. It argues that the court erred by admitting testimony that the bank promised Nischke, in a phone call and visit to her, that it would remove the tank. The bank claims this testimony was prejudicial inadmissible hearsay lacking in foundation. We agree that the bank was prejudiced by the court's erroneous admission of this evidence. We therefore reverse and remand for a new trial.

In the interest of judicial economy, we address additional issues that we expect to arise again on retrial. We conclude that the bank possessed the tank and thus owed Nischke a duty of due care while it possessed the tank. We further conclude that while the bank did not have a duty independent of its duty of due care to inform Nischke it was abandoning the tank, a jury might find the bank's failure to so inform Nischke was a breach of the bank's duty of due care. Finally, we conclude that the court is not required to impute Nischke's husband's negligence to her.

## BACKGROUND

In 1966, Carl and Lois Nischke entered into a lease agreement with the Rowley Oil Company (Rowley). Under the contract, Rowley installed and leased a gasoline pump and an underground storage tank on the Nischke farm in exchange for their agreement to buy all their gas from Rowley. The Nischkes stopped using the tank in the late 1970s, and the pump broke and became idle in 1982. In 1979, Rowley borrowed money from the bank. The loan agreement gave the bank a security interest in certain assets, including Rowley's equipment. In 1984, Rowley defaulted on the loan and, in lieu of foreclosure, transferred the secured property to the bank, which agreed to attempt to sell the property and apply the proceeds to the debt. Toward this end, the bank sent a letter to Carl Nischke in 1984 stating that it had taken possession of Rowley's assets and offering to sell the gas pump and tank to Carl. Carl did not answer the letter.

Around 1989, after Carl died, Nischke's water began tasting and smelling like gasoline. A Department of Natural Resources specialist discovered petroleum-contaminated soil around her gas tank, confirmed that her water was contaminated with a hazardous substance due to a leak in the underground tank and advised Nischke to stop consuming the water. The DNR also advised Nischke that because she was legally responsible for the contamination under § 144.76(3), STATS.,[1] she was required to conduct a site

---

[1] Section 144.76(3), STATS., states:

A person who possesses or controls a hazardous substance which is discharged or who causes the discharge of a hazardous substance shall take the actions necessary to restore the environment to the extent practicable and minimize the harmful effects from the discharge to the air, lands or waters of the state.

investigation and take remedial action to restore the environment if necessary. Nischke was financially unable to test for and clean her property's contamination. She filed this lawsuit against the bank.

Nischke's cause of action was based in negligence. She argued that the bank was negligent for failing to inform her that it was abandoning its security interest in the gas tank. She also argued that the bank, as a secured creditor, had exercised dominion and control over the secured property and therefore had a duty to protect against dangerous conditions in the property. In support of these theories, Nischke presented evidence of the bank's letter. She also testified that sometime in 1984, she received a call from someone saying that he was from the bank and informing her that the bank had taken over Rowley's holdings and wanted to come to the property to remove the pump and tank. She testified that a few days later, two men who said they were from the bank came to the property, removed the gas pump and said they would return to remove the tank at a later date.

The bank admitted sending the letter offering to sell the pump and tank, but consistently denied it ever promised Nischke in a call, visit or otherwise that it would remove them. In motions in limine, objections at trial and motions after verdict, the bank objected to Nischke's testimony. The court denied these motions and objections. It instructed the jury that if the bank exercised dominion and control over the tank, it was liable for any unsafe condition in the secured property that caused injury. It also instructed the jury that if it found the bank had informed Nischke that it possessed the gas tank, the bank had a separate duty to inform her it was abandoning the tank and was negligent if it failed to do so. The bank requested a special verdict

question asking whether the Nischkes had signed a hold harmless agreement releasing Rowley from liability. The court refused to submit the question.

The jury returned a special verdict finding that the bank negligently exercised dominion and control over the tank and negligently breached a separate duty to inform. The jury attributed 70% of Nischke's injuries to the bank's negligence; 10% to her own negligence; 5% to her husband, Carl's, negligence and 15% to Rowley's negligence. It found Nischke's damages were $250,000. On the bank's motions after verdict, the court reduced the damages from $250,000 to $49,000 to reflect the diminution in the property's value. The court refused to impute Carl's negligence to Lois and denied the bank's motions to change the answers in the verdict and to order a new trial. The parties filed this appeal and cross-appeal.

## ADMISSIBILITY OF ALLEGED EMPLOYEES' STATEMENTS

The bank argues that the trial court erred by admitting evidence of the purported phone call and visit to the Nischkes. It argues that this evidence was highly prejudicial inadmissible hearsay lacking foundation. A trial court's decision to admit or exclude evidence is a discretionary determination that will not be upset on appeal if it has a reasonable basis and was made in accordance with the facts of record. *State v. Jenkins*, 168 Wis. 2d 175, 186, 483 N.W.2d 262, 265 (Ct. App. 1992). If the court's decision is supportable by the record, we will not reverse even if the trial court gave the wrong reason or no reason at all. *Id.* We conclude that the court erred by admitting the out-of-court

statements because they were not sufficiently authenticated as being made by bank employees.

■

A prerequisite to the admissibility of all evidence is that it meet the authentication requirements of §.909.01, STATS. *Nelson v. Zeimetz*, 150 Wis. 2d 785, 797, 442 N.W.2d 530, 535 (Ct. App. 1989). Section 909.01 states that the "requirements of authentication or identification as a condition precedent to admissibility are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Thus, Nischke's testimony is only admissible against the bank if sufficient evidence in the record supports a finding that the statements were actually made by bank employees.

We conclude that there is not sufficient evidence to support a finding that the statements made in the phone call and visit were made by bank employees. The alleged statements of self-identification may not themselves be used to identify the speakers as bank employees. As one authority notes, "a telephone call out of the blue from one who identified himself as 'X'. . . is not sufficient authentication of the call as in fact coming from X." 2 McCORMICK ON EVIDENCE § 226 at 51 (John W. Strong ed. 1992). This is analogous to the long established rule that a declarant's agency may not be established by relying on the declarant's own statements of agency, but must be established with independent evidence. 4 JOHN H. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1078 at 177 (James H. Chadbourn ed. 1972) ("It may be noted that the *fact* of agency must of course be somehow evidenced *before the alleged agent's declarations* can be received as admissions; and therefore the use of the alleged agent's hearsay assertions that he is agent would for that pur-

106

pose be inadmissible, as merely begging the very question.") (emphasis in the original); *Davis v. Henderson*, 20 Wis. 547, 550 (1866) ("The fact of agency must first be established by other and independent evidence, before the declarations of the agent can in any case be received to charge the principal.").

Circumstantial evidence does not authenticate the purported employees' statements as coming from the bank's employees. The purported employees were never identified, nor were they present to testify at trial. The bank denied that any of its employees ever called or visited Nischke promising to remove the tank. The letter it sent to the Nischkes made no mention of past or future calls or visits from its employees or promises to remove the tank. Thus, the alleged employees' statements and conduct are not in conformity with known communications from the bank.

Nischke was the only one who testified as to the relationship of the declarants to the bank. She did not have personal knowledge that the people with whom she spoke were in fact bank employees. *See* § 909.015(1), STATS. She did not recognize the voice on the telephone as being that of a bank employee. Section 909.015(5), STATS. Nor was she able to identify any distinctive characteristics of any speakers who, in conjunction with circumstances, would authenticate their identity as bank employees. Section 909.015(4), STATS. She did not testify as to any of the declarants' names.

Furthermore, the declarants did not disclose information that only a bank employee would possess. *See, e.g., Campbell v. Wilson*, 18 Wis. 2d 22, 30 n.1, 117 N.W.2d 620, 625 n.1 (1962) ("Where the message itself reveals that the speaker has knowledge of facts which only the person whose name [the speaker] has used

107

would be likely to know, this is sufficient authentication."). Rowley also knew who originally had tanks and pumps. In fact, Gerald Rowley testified that after the transfer of assets, the bank told him which customers had not agreed to purchase the equipment. He admitted to independently contacting and trying to persuade former customers to buy this equipment. He further admitted removing pumps from two former customers' properties. Following this testimony, Nischke herself argued at closing argument that the call and visit were made by Rowley, though she suggested the bank tacitly consented to these actions. We conclude that there is insufficient evidence in the record to support a finding that the statements were made by bank employees.

## PREJUDICE FROM INADMISSIBLE EVIDENCE

■ An evidentiary error only requires reversal or a new trial where the improper admission of evidence has affected the substantial rights of the party seeking relief on appeal. *Heggy v. Grutzner*, 156 Wis. 2d 186, 196, 456 N.W.2d 845, 850 (Ct. App. 1990); § 805.18(2), STATS. This is a harmless error test. *Heggy*, 156 Wis. 2d at 197, 456 N.W.2d at 850. Under this test, we only reverse where there is a reasonable possibility that the error contributed to the final result. *Id.* (citing *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 232 (1985)). We conclude that there is a reasonable possibility that the inadmissible evidence substantially prejudiced the bank by contributing to a finding that it negligently exercised dominion and control over the tank.

■ The jury was instructed that the bank, as secured creditor, could be liable for injuries caused by danger-

ous conditions of its secured property if it negligently exercised dominion and control over that property. We conclude that there is a reasonable possibility the inadmissible evidence of the phone call and visit contributed to the jury's finding that the bank exercised dominion and control over the tank. More importantly, the jury may have relied on this inadmissible evidence in concluding that the bank was negligent. By improperly admitting the evidence to demonstrate acts of dominion and control, the jury was given an opportunity it otherwise would not have had to evaluate the propriety of those actions. The jury might reasonably infer the bank was negligent in twice stating its intention to remove the tank, starting a removal job, promising to return to complete that job and then failing to return despite Nischke's requests. Because the evidence prejudiced the bank by suggesting it negligently exercised dominion and control over the tank, we conclude that the judgment must be reversed.

## POSSESSION AND DUTY OF DUE CARE

The bank argues that absent this evidence, the remaining credible evidence is insufficient to support a finding that it possessed the tank and exercised dominion and control over it. Thus, it concludes, it owed no duty of due care to Nischke and we must reverse and dismiss. We disagree and conclude from the remaining evidence that the bank possessed the underground tank as a matter of law. Possession and control of mortgaged property is normally a question of fact. *Peterson Cutting Die Co. v. Bach Sales Co.*, 269 Wis. 113, 117, 68 N.W.2d 804, 806 (1955). Questions of fact are resolved by the trier of fact. Where, however, facts are undis-

puted and admit of only one reasonable inference, we may decide whether the bank possessed the tank as a matter of law. *See, e.g., Hennekens v. Hoerl*, 160 Wis. 2d 144, 162, 465 N.W.2d 812, 820 (1991); *Mowry v. Badger State Mut. Cas. Co.*, 129 Wis. 2d 496, 518, 385 N.W.2d 171, 181 (1986).

Unless otherwise agreed, a secured creditor has on default the right to take possession of the collateral of the debtor. Section 409.503, STATS. The secured creditor may obtain possession by use of judicial process, such as replevin. Section 409.503, STATS.; 9 RONALD A. ANDERSON ON THE UNIFORM COMMERCIAL CODE § 9-503:26-27 (3d ed. 1985). Alternatively, the security agreement may require the debtor to assemble and make available to the creditor the collateral, § 409.503, or the debtor may voluntarily surrender the collateral to the creditor's possession. ANDERSON, *supra*, § 9-503:24. Once a secured creditor has taken possession of the collateral, it may sell it and apply the proceeds to its own expenses, including expenses of repossession, with any surplus applied to the debtor's account. Section 409.504, STATS.

Here, the remaining undisputed evidence is that Rowley was in default. The bank was thus entitled to possess the collateral. In lieu of foreclosure and judicial procedures, Rowley agreed to transfer its assets to the bank. The tank was among the assets transferred. Following this transfer, the bank informed Carl Nischke that it had "taken possession" of Rowley's assets. It also offered to sell the tank. These acts lead to the inescapable conclusion that the bank possessed the underground storage tank.

The bank argues that these acts only amount to constructive possession, not actual possession, and, citing *Marcon v. First Fed. S&L Ass'n*, 374 N.E.2d 1028, 1030 (Ill. App. 1978); *Zisman v. Duquesne*, 18 A.2d 95 (Pa. Super. Ct. 1941), it suggests it cannot be liable absent a finding of greater acts of dominion and control. These cases do indicate that a bank-mortgagee must have actual possession of real estate before a duty of care arises. As one authority notes, once the mortgagee is in possession, it becomes personally liable in tort for injuries resulting from its negligent use of the property or failure to perform duties imposed by law upon a landowner. *See generally* 1 GRANT S. NELSON & DALE A. WHITMAN, REAL ESTATE FINANCE LAW § 4.26 (3d ed. 1993). However, these cases are distinguishable on their facts. In each case there was neither an actual foreclosure nor clear transfer of possession of the property. In the absence of such acts, the courts were forced to examine other acts the mortgagee had engaged in that might indicate it had nevertheless taken possession of the property. Here, however, there had been an unequivocal transfer of possession from Rowley to the bank, and clear acts of dominion and control consistent with such possession. The bank possessed the tank as a matter of law and consequently owed Nischke a duty of due care while in possession of the tank.

## PUBLIC POLICY

Finally, the bank argues that public policy precludes its liability. It argues that it should not be held liable for Nischke's injury because her injury is too remote from its negligence; too wholly out of proportion to its culpability; that in retrospect it appears too highly extraordinary its negligence caused $250,000 in

damages; that allowing her recovery would place too unreasonable a burden on it and open the way for other fraudulent claims or enter a field with no just stopping point. *See, e.g., Schlomer v. Perina*, 169 Wis. 2d 247, 253, 485 N.W.2d 399, 402 (1992).

Whether public policy considerations preclude the imposition of liability is a pure question of law. *Id.* at 252, 485 N.W.2d at 401-02. We see no reason public policy should bar Nischke's recovery if the bank's negligence while in possession of the tank caused Nischke's property damage.

## DUTY TO INFORM

Although we reverse and remand for a new trial, in the interest of judicial economy we will address those issues that will arise again during the new trial. *State v. Temby*, 108 Wis. 2d 521, 527, 322 N.W.2d 522, 525 (Ct. App. 1982). The bank argues that the court gave a prejudicial and erroneous instruction and special verdict question as to a duty to inform. Trial courts have wide discretion in deciding what instructions and special verdicts will be given. *D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 334-36, 475 N.W.2d 587, 597-98 (Ct. App. 1991). Generally, an instruction, as a whole, need only correctly state the law, while special verdict questions need only fairly present the material issues of fact to the jury. *Id.*

The instructions and special verdict were worded in such a way that even if the jury found the bank did not possess the tank, or it found the bank was not negligent in its possession, the jury might still find the bank negligent if it told Nischke it possessed the tank

112

and then failed to inform her it was abandoning the tank.[2] The bank argues that the law only recognizes the duty of due care owed by a secured creditor in possession. It argues that there is no legal basis for imposing upon it a separate duty, independent of a finding of dominion and control, to inform third parties it is abandoning a security interest. Nischke suggests that general tort principles recognize an assumed duty to inform. We conclude that the remaining evidence in this case does not support imposing an independent assumed duty to inform. This does not, however, preclude Nischke from arguing on remand that the bank breached its general duty of due care by not informing her it was abandoning the tank it possessed.

Wisconsin has long recognized that liability may be imposed on one who, having no duty to act, gratuitously undertakes to act and does so negligently. *American Mut. Liab. Ins. Co. v. St. Paul F. & M. Ins. Co.*, 48 Wis. 2d 305, 313, 179 N.W.2d 864, 868 (1970); *Nelson v. Chicago M., St. P. & Pac. Ry. Co.*, 252 Wis. 585, 591, 32 N.W.2d 340, 343 (1948). RESTATEMENT (SECOND) OF TORTS § 323 (1965) states:

---

[2] The court gave the following instruction:

> If, in its efforts to sell the underground storage tank, the bank informed Mrs. Nischke that as a secured creditor of Rowley Oil it had taken possession of the tank on her property, then it had the duty to Mrs. Nischke to inform her when the bank abandoned its security interest in the underground storage tank. Failure to so inform Mrs. Nischke constitutes negligence . . . .

The special verdict conformed to this instruction and asked independently of the bank's negligent exercise of dominion and control whether it was "negligent in its duty to inform Mrs. Nischke" and whether such negligence caused her injuries.

> One who undertakes, gratuitously or for considera-
> tion, to render services to another which he should
> recognize as necessary for the protection of the
> other's person or things, is subject to liability to the
> other for physical harm resulting from his failure to
> exercise reasonable care to perform his undertak-
> ing, if
>
> (a) his failure to exercise such care increases
> the risk of such harm, or
>
> (b) the harm is suffered because of the other's
> reliance upon the undertaking.

We assume arguendo that, in addition to undertaking actual performance, one may assume a duty of care by promising to perform a service that induces reliance.[3] We also assume arguendo that an actor's duty extends to reasonably exercising due care in terminating the undertaking, and that this includes a duty to inform the beneficiary that performance is being terminated.[4]

---

[3] The Restatement leaves open the question whether a mere promise to perform, without actually undertaking the performance, is sufficient to impose a duty of care. RESTATEMENT (SECOND) OF TORTS § 323 comment d (1965). It suggests there is no essential reason why the breach of a promise inducing reliance should not be actionable. *Id.* Some jurisdictions have held a promise to perform inducing reliance gives rise to liability. *Johnson v. Souza*, 176 A.2d 797, 798 (N.J. Super. Ct. App. Div. 1961).

[4] The Restatement also notes that while an actor may capriciously terminate services without liability, if the assistance has put the other in a worse position than before the undertaking, the actor will be required to exercise reasonable care in the termination of services. RESTATEMENT (SECOND) OF TORTS § 323 comment c (1965). Reasonable care in the termination of services might well require notice that the promise or services will not be performed. *See, e.g.,* W. PAGE KEETON ET AL., KEETON & PROSSER ON THE LAW OF TORTS § 56 at 382 (5th ed. 1984) (the

114

Thus, a bank not in possession of secured property might nevertheless assume a duty of care if it gratuitously promised a third party that it would exercise control over a secured property and the bank should recognize such control is necessary to protect the third party. The bank's duty might include a duty to inform the other that it will not perform.

Here, however, remaining credible evidence does not support a finding that the bank assumed a separate duty to inform Nischke that it was abandoning its security interest. Evidence that the bank promised to remove the tank was inadmissible. The bank's letter to Carl offering to sell the tank was not a gratuitous promise to undertake a service for the Nischkes' benefit giving rise to a separate assumed duty of care. It was a contractual offer undertaken for the benefit of the bank and Rowley. The bank did not have a separate duty to inform Nischke it was abandoning its security interest.

This conclusion does not prevent Nischke from arguing on remand that the bank breached its general duty of due care by failing to inform her it was abandoning the tank. As the court properly instructed the jury, negligence is a failure to exercise ordinary care, and includes an act or failure to act under circumstances in which a reasonable person would foresee that such action or failure to act will subject property of another to an unreasonable risk of injury or damage. *See Erickson v. Prudential Prop. & Cas. Ins. Co.*, 166 Wis. 2d 82, 92, 479 N.W.2d 552, 556 (Ct. App. 1991);

---

actor "may discontinue his performance and step out of the picture altogether, upon notice of his intention and disclosure of what remains undone, provided that it is reasonable to do so under the circumstances.") (footnotes omitted).

WIS J I—CIVIL 1005. If an ordinary prudent bank in possession of an underground gas tank ought reasonably to foresee that Nischke's property was subject to injury by failing to inform her the tank was being abandoned, then it is negligent to fail to inform. Nischke may argue this. In its discretion, the court may instruct the jury accordingly.

## IMPUTATION OF NEGLIGENCE

The bank argues that Carl and Lois Nischkes' individual negligence must be combined for purposes of determining the bank's liability. The court refused to combine their negligence because it was not persuaded by the bank that it was required to do so.

The general rule is that the negligence of the parties is to be compared individually for purposes of determining whether liability exists. *Bruttig v. Olsen*, 154 Wis. 2d 270, 275, 453 N.W.2d 153, 155 (Ct. App. 1989). This applies to married couples. *See* RESTATEMENT (SECOND) OF TORTS § 487 and comment b (1965) ("The negligence of husband or wife does not bar the other spouse from recovery for his or her own physical harm. . . . There is . . . no imputation of negligence by reason of the family relation alone . . ..."). Only one Wisconsin case, *Reber v. Hanson*, 260 Wis. 632, 51 N.W.2d 505 (1952), combined the negligence of a husband and wife based solely on that relationship. That case is factually distinguishable from this case. In *Reber*, the husband's and wife's individual negligence in failing to protect their child was combined to determine liability because the court concluded that their duty to protect their child was equal; on the facts, they had an equal opportunity to protect the child; and, as a

matter of law, the duty was not divisible. *Id.* at 638, 51 N.W.2d at 508.

■■

A review of the record does not indicate that as a matter of law Lois' and Carl's duty to prevent harm to the property was not divisible and that they had an equal opportunity to prevent the injury. Carl's negligence might still be imputed to Lois if the court is persuaded they were engaged in a joint enterprise or he was Lois' servant or agent. *See* RESTATEMENT (SECOND) OF TORTS §§ 486 and 489 (1965). However, the record does not compel this conclusion. The court is not required to impute Carl's negligence to Lois.[5]

## DAMAGES

Nischke argues that the court erred by reducing her damages from $250,000 to $49,000; she claims she should be able to recover the cost of repair even though it exceeds the diminishment in her property's value.

[5] We do not address whether the court was required to give a special verdict question on a hold harmless agreement. A trial court has discretion in framing special verdict questions. *D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 336, 475 N.W.2d 587, 598 (Ct. App. 1991). The record does not reflect the reasons the court refused to submit the question. It may have found the agreement was not or could not be assigned. It may have concluded that the release was inapplicable to the bank because it only purports to release Rowley and its employees. Alternatively, it may have found the release barred on public policy grounds or too broad and general in terms to express the parties' intent to release Rowley from this type of injury. *See, e.g., Dobratz v. Thomson*, 161 Wis. 2d 502, 515-22, 468 N.W.2d 654, 658-61 (1991). Because the record is insufficient, we refuse to determine the propriety of a special verdict question on the release.

The court lowered her award because it believed it was required to award the lesser of the cost of repair or the decrease in the property's fair market value. It also reasoned that, given the DNR's backlog of cases, it was too speculative that Nischke would ever be required by the DNR to absorb the cleanup costs. We conclude that because Nischke has a legal duty to restore the environment, she may recover the cost of repair even though such costs exceed the diminishment in her property's value.

The bank and Nischke note that the general rule in Wisconsin is that a property owner's damages are the lesser of the cost of repair or the property's diminished value. *See, e.g., Bunker v. Hudson*, 122 Wis. 43, 55, 99 N.W. 448, 453 (1904); 1 RUSSELL M. WARE, THE LAW OF DAMAGES IN WISCONSIN § 18.4 (1988); WIS J I—CIVIL 1804. The rationale for this rule is to ensure a property owner only recovers her actual loss. Where, for example, a property's value is decreased to $0, the owner should recover the lost value of her property, but awarding the cost of repair in excess of that value would give the property owner a windfall and be an inefficient use of economic resources. *See, e.g., Pedelty v. Wisconsin Zinc Co.*, 148 Wis. 245, 252, 134 N.W. 356, 358 (1912) (awarding owner cost to restore land in excess of decrease in value would be unjust to the wrongdoer by awarding the owner a far greater sum than actually lost). However, we conclude that the general rule is inapplicable in this case.

This case is similar to *School Dist. No. 15 v. Kunz*, 249 Wis. 272, 24 N.W.2d 598 (1946). In that case, the school district sued Kunz for removing lateral support to land causing the collapse of a school's retaining wall. The court affirmed the award of damages for the cost to

repair, even though the award might exceed the diminution in value to the land. The court reasoned that the collapse of the retaining wall posed a hazard to the school children and that the school district, in discharge of a governmental function, was obligated to remove the hazard. The court noted it would not be proper to force taxpayers to pay the difference between the cost of repair and the diminution in value.

Similarly, the discharge of a hazardous substance is an environmental hazard to the citizens of Wisconsin. "The vitally important work of protecting the life sustaining forces around us, collectively referred to as the environment, is basic and fundamental to our survival." *State v. Mauthe*, 123 Wis. 2d 288, 302, 366 N.W.2d 871, 878 (1985). To protect against environmental despoliation, the legislature enacted § 144.76, STATS. Under § 144.76, Nischke has a duty as a landowner in possession of discharged hazardous substances to take remedial measures to restore the environment. *See Mauthe*, 123 Wis. 2d at 300-02, 366 N.W.2d at 877-78. Section 144.76 states:

> A person who possesses or controls a hazardous substance which is discharged or who causes the discharge of a hazardous substance shall take the actions necessary to restore the environment to the extent practicable and minimize the harmful effects from the discharge to the air, lands or waters of the state.

*See also* WIS. ADMIN. CODE § NR 158.05(2).

The DNR sent Nischke two letters informing her that she had a duty to investigate the extent of the contamination and take remedial action if applicable. Nischke was instructed to perform a site investigation. *See* WIS. ADMIN. CODE § NR 158.09(2). She has not yet

done so. If a site investigation indicates that immediate, interim or remedial action is necessary, then Nischke must identify, evaluate and select such action. *See* WIS. ADMIN. CODE § NR 716.17(3). If no further action is necessary to protect the public health, safety and welfare or environment, Nischke may request the department close her case. *See* WIS. ADMIN. CODE § NR 716.17(4). However, her obligation to take these measures does not hinge upon the DNR's caseload or whether it has brought an enforcement action against her. Under the statute and the code, Nischke is obligated to take these steps once notified by the department. *See* WIS. ADMIN. CODE § NR 716.02; 724.02(2); 724.05(1) (site investigation and remedial action requirements apply regardless of whether there is direct involvement or oversight by the department).

Thus, assuming the bank was the negligent cause of the leak, its negligence has made Nischke legally obligated to incur costs to restore her property. These are recoverable as the normal measure of compensatory damages, despite the fact such expenses may exceed the diminution in fair market value. At a minimum, Nischke is required to conduct a site investigation, and she may recover for that expense. If the jury finds from sufficient evidence that she will be obligated to take further remedial action, she may also recover for the expense of those measures. If the jury finds she will not be obligated to take further remedial measures, she may also recover the diminishment in the fair market value to her property.

## CONCLUSION

The court erred by admitting unauthenticated evidence. It is reasonably possible this evidence

120

prejudiced the bank by contributing to the jury's finding that the bank negligently exercised dominion and control over the tank. We therefore reverse and remand for a new trial. We also conclude that the bank possessed the tank as a matter of law, and thus owed Nischke a duty of due care while in possession. The bank's failure to inform Nischke that it was abandoning the tank may have been a breach of this general duty of due care, although the bank was not under a separate duty, independent from its duty of due care while it possessed the tank, to inform her it was abandoning the tank. The court is not required to impute Carl's negligence to Lois. Lois Nischke may recover damages for the cost of conducting a site investigation and for either the cost of any additional required remedial measures to restore her property or the diminishment in its fair market value.

*By the Court.*—Judgment reversed and cause remanded for a new trial.

MYSE, J. (*dissenting*). I respectfully dissent from that portion of the majority opinion that concludes that the trial court erroneously exercised its discretion by admitting Nischke's testimony concerning telephone conversations with a purported bank employe. As the majority notes, the decision to admit or exclude evidence is discretionary with the trial court, and an appellate court will not reverse a discretionary decision unless it concludes that there is an erroneous exercise of discretion. *State v. Jenkins*, 168 Wis. 2d 175, 186, 483 N.W.2d 262, 265 (Ct. App. 1992). Discretionary determinations are to be reviewed deferentially. *Id.*

Here, the trial court correctly cited the law controlling the admission of the evidence in question. Section

909.01, STATS., requires the establishment of authenticity of evidence before the evidence may be admitted. The authenticity requirement is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* Authentication involves a low threshold of proof merely sufficient to permit a reasonable person to conclude the matter is what the proponent claims. 2 McCORMICK ON EVIDENCE § 227 at 53 (John W. Strong ed. 1992). The proponent need not prove that the matter is what the proponent claims, but must only establish sufficient authentication to support admissibility so that the jury may ultimately resolve the disputed issue of fact regarding the nature of the proposed evidence. WIS. STAT. ANN. § 909.01 (West 1994) Judicial Council Committee's Note, 1974; McCORMICK, *supra*, § 194 at 53-54. Authentication may be accomplished through circumstantial evidence. *Campbell v. Wilson,* 18 Wis. 2d 22, 30 n.1, 117 N.W.2d 620, 625 n.1 (1962).

The trial court examined the evidence of record and concluded that it was sufficient to authenticate the telephone conversation between Nischke and the purported bank representatives. Here, Nischke testified that in spring 1984, she received a phone call from a man stating he was with the bank and that the bank wanted to remove the pump and tank from her property. Several days later, two men arrived who stated that they were from the bank. They removed the pump from Nischke's property and told her they would come back later to remove the tank. Statements in accord with the nature of the commercial transaction are sufficient to meet the authenticity requirement. Here the nature of the commercial transaction between the bank and Nischke is sufficient to authenticate both the phone conversation and the conversation surrounding

the removal of the pump and the promised removal of the tank.

On March 9, 1984, presumably prior to the telephone call, the bank sent Carl Nischke a letter stating that it had taken possession of Rowley's assets and offering to sell the pump and tank to the Nischkes. The letter requested a response to the offer within fifteen days. Nischke did not purchase the pump and tank. The subsequent telephone call purporting to be from the bank announcing that it was going to remove its secured property from Nischke's land is a natural and anticipated extension of a series of events concerning the pump and tank, and is entirely consistent with the prior dealings between Nischke and the bank. It must be remembered that the issue we are dealing with is not whether there is proof that the call originated from agents of the bank, but simply whether there is sufficient authentication to permit the jury to resolve this disputed issue of fact.

The majority opinion disposes of the authentication issue by concluding that the knowledge of the tank's existence and the bank's action as a secured creditor were not facts uniquely within the bank's knowledge. The majority notes that the bank told Rowley about the bank's action as a secured creditor, the bank's letter to the Nischkes offering to sell the pump and tank and the Nischkes' refusal to purchase the pump and tank. However, the fact that the bank may have voluntarily shared this information does not defeat authentication because the statements are consistent with the commercial transaction between the bank and the Nischkes. *Campbell*, 18 Wis. 2d at 30 n.1, 117 N.W.2d at 625 n.1, and the cases cited in the footnote do not require that the caller possess unique knowledge. Rather, a telephone call may be authenti-

cated "[w]here the message itself reveals that the speaker has knowledge of facts which only the person whose name he has used *would be likely to know.*" (Emphasis added.) *Merchants' Nat'l Bank v. State Bank,* 214 N.W. 750, 753 (Minn. 1927), cited in the footnote, ruled that a telephone call to the witness may be authenticated if it is "reasonably inferable" from the content of the conversation, the time of its occurrence and the prior and subsequent conduct of the parties that the caller is who he or she purports to be.

Here, a reasonable person could conclude that the bank alone had the right to remove these items from the Nischkes' land and to take them into its possession. While Rowley may have known about the bank's letter and that the Nischkes refused to purchase the tank and pump, no one suggests that these facts are common knowledge. Thus, it is "reasonably inferable," based upon these circumstances, that a person purporting to exercise the power to remove the pump and tank on the bank's behalf was acting for the bank. Whether the caller was in fact a bank agent or Rowley is a proper question for the jury to resolve.

Based upon the deferential standard of review applied to trial court discretionary determinations regarding the admissibility of evidence, the degree of authentication that exists from the circumstances surrounding the statement and the fact that the bank had a full and fair opportunity to try this disputed issue of fact before the jury, I would not reverse the judgment based upon the trial court's admission of this evidence.