Wayne MALLOW, Belva Mallow, Milwaukee Sheet
Metal Insurance Fund, and Metropolitan Life
Insurance Company Group Health Claims,
Plaintiffs-Respondents-Cross Appellants,

v.

Dr. Arthur E. ANGOVE, Wisconsin Health Care
Liability Insurance Plan, and Wisconsin
Patients Compensation Fund, Defendants-
Appellants-Cross Respondents,†

Dr. Gerald P. NELEZEN, Dr. J. David Lewis, Dr.
Gary L. Kuhl, and New Berlin Memorial
Hospital, Defendants.

Court of Appeals

*No. 88–0107. Submitted on briefs October 5, 1988.—Decided
December 21, 1988.*

(Also reported in 434 N.W.2d 839.)

† Petition to review denied.

On behalf of the defendants-appellants-cross respondents, the cause was submitted on the briefs of *Michael J. Pfau, Susan M. Ray,* and *Peter A. Stanford,* of *Kluwin, Dunphy, Hinshaw, Culbertson,* of Milwaukee.

On behalf of the plaintiffs-respondents-cross appellants, the cause was submitted on the briefs of *Howard B. Mitz* and *Richard W. Cross* of *Howard B. Mitz, S.C.,* of Mequon.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.  This medical malpractice case was tried to a twelve-person jury over a period of eight days. The jury returned a verdict finding that Dr. Arthur E. Angove was not negligent in his surgical treatment of Belva Mallow. By postverdict order, the trial court granted Belva Mallow and the other plain-

tiffs (collectively, the Mallows)[1] a new trial. Dr. Angove, the Wisconsin Health Care Liability Insurance Plan and the Wisconsin Patients Compensation Fund (collectively, Dr. Angove) appeal this postverdict order. The issue on appeal is whether the trial court's order was premised upon sufficiency of evidence or interest of justice grounds and whether the order was appropriate.

The Mallows cross-appeal the trial court's pre-trial order denying discovery of information regarding Dr. Angove's recent suspension from New Berlin Memorial Hospital. We conclude that the court's order limiting this discovery was prejudicial error, entitling the Mallows to a new trial. Therefore, we need not address the issue raised on appeal by Dr. Angove and we affirm the trial court's ultimate order of a new trial.

On January 18, 1983, Belva Mallow underwent surgery for the removal of her gall bladder. Dr. Angove conducted the surgery which was performed at New Berlin Memorial Hospital. Belva Mallow did not recover from the surgery as expected, and it was determined that her postsurgical difficulties were the result of a damaged common bile duct.

The Mallows sued Dr. Angove, alleging that the doctor was negligent in performing the gall bladder surgery.[2] Specifically, they alleged that Dr. Angove had injured Belva Mallow's common bile duct during the surgery and that, as a result of this injury, she was required to undergo three additional surgeries and suffered other damages.

---

[1] The other plaintiffs are Belva Mallow's husband, Wayne, and certain subrogated insurance carriers.

[2] The complaint originally named three other physicians and the New Berlin Memorial Hospital as additional defendants. Prior to trial, these additional defendants were dismissed from the action.

In late August of 1987, before trial but after the close of discovery, the Mallows learned that New Berlin Memorial Hospital had suspended Dr. Angove's surgical privileges a few weeks earlier. They made several unsuccessful attempts to obtain information from the defendants regarding the suspension. Subsequently, the Mallows filed notices of deposition and a demand for discovery on Dr. Angove and the hospital. Dr. Angove and the hospital moved to prevent them from obtaining this discovery. The Mallows moved for an amendment to the scheduling order which would have allowed discovery concerning the suspension of Dr. Angove.

The trial court concluded that the Mallows were foreclosed from discovery into this area. In its finding, the trial court concluded that *State ex rel. Good Samaritan Medical Center-Deaconess Hosp. Campus v. Moroney,* 123 Wis. 2d 89, 365 N.W.2d 887 (Ct. App. 1985), in which this court determined that the records of hospital governing bodies are discoverable, had been effectively overruled by the legislature's subsequent amendment of sec. 146.37, Stats. It is this order from which the Mallows appeal.

The issue on appeal involves the construction of sec. 146.38, Stats., and the legislature's amendment to sec. 146.37(1), Stats. The meaning of a statute is a question of law which we will decide independently of the trial court's conclusions. *Estate of Boyle v. Wickhem, Buell, Meier, Wickhem & Southworth, S.C.,* 134 Wis. 2d 214, 218, 397 N.W.2d 124, 126 (Ct. App. 1986).

Section 146.38, Stats., governs confidentiality of information in the peer review process. It provides in part:

(1) No person who participates in the review or evaluation of the services of health care providers or facilities or charges for such services may disclose any information acquired in connection with such review or evaluation except as provided in sub. (3).[3]

(2) All organizations reviewing or evaluating the services of health care providers shall keep a record of their investigations, inquiries, proceedings and conclusions. No such record may be released to any person under s. 804.10(4) or otherwise except as provided in sub. (3). No such record may be used in any civil action for personal injuries against the health care provider or facility; however, information, documents or records presented during the review or evaluation may not be construed as immune from discovery under s. 804.10 or use of any civil action merely because they were so presented. Any person who testifies during or participates in the review or evaluation may testify in any civil action as to matters within his or her knowledge, but may not testify as to information obtained through his or her participation in the review or evaluation, nor as to any conclusion of such review or evaluation.

Sec. 146.38(1), (2).

In *Moroney,* this court found it unclear whether the phrase, "organizations reviewing or evaluating the services of health care providers," as it is used in sec. 146.38, Stats., included hospital governing bodies or whether it referred to peer review committees alone. *Moroney,* 123 Wis. 2d at 94–95, 365 N.W.2d at 890. In order to construe this ambiguity we looked to sec. 146.37, Stats.:

[3]The exceptions delineated in sec. 146.38(3), Stats., are not at issue in this case.

Sections 146.37 and 146.38, Stats., were both created by ch. 187, Laws of 1975. Both sections relate to the evaluation of the services of health care providers. We therefore will consider the language of sec. 146.37 in our construction of sec. 146.38.

*Moroney,* 123 Wis. 2d at 96, 365 N.W.2d at 891.

In *Moroney,* we concluded that the appropriate test was whether the discovery sought "the record of a health care review program organized and operated to help improve the quality of health care." *Id.* at 97, 365 N.W.2d at 891. If so, the material sought was protected by the confidentiality provisions of sec. 146.38(2), Stats. If not, the material was subject to discovery. This conclusion was further based on the premise that:

> The governing body itself does not review the physician's practice. Its decision will be based in part on the conclusions of the credentials committee and the active medical staff, which are based on the peer review process described above. The decision of a governing body thus is one step removed from the actual peer review.

*Moroney,* 123 Wis. 2d at 99, 365 N.W.2d at 892.

At the time of *Moroney,* sec. 146.37(1), Stats. (1983–84), provided:

> **146.37 Health care services review; civil immunity. (1)** No person acting in good faith who participates in the review or evaluation of the services of health care providers or facilities or the charges for such services conducted in connection with any program organized and operated to help improve the quality of health care, to avoid improper utilization of the services of health care providers or facilities or to determine the reasonable charges for such services, or who participates in the hospital

rate-setting activities under ch. 54, is liable for any civil damages as a result of any act or omission by such person in the course of such review or evaluation.

Subsequent to *Moroney,* the legislature added the following language to sec. 146.37(1), Stats. (1985–86):

Acts and omissions to which this subsection applies include, but are not limited to, acts or omissions by peer review committees or hospital governing bodies in censuring, reprimanding, limiting or revoking hospital staff privileges or notifying the medical examining board under s. 50.36 or taking any other disciplinary action against a health care provider or facility.

Sec. 13t, 1985 Wis. Act 340.[4]

This amendment specifically extended the statutory immunity to acts or omissions by peer review committees or hospital governing bodies. Dr. Angove argues that this amendment also brings the acts of governing bodies within the scope of the confidentiality provisions of sec. 146.38, Stats. We reject this argument.

We presume that the legislature acts with full knowledge of existing statutes and how the courts have interpreted them. *C.L. v. Edson,* 140 Wis. 2d 168, 181, 409 N.W.2d 417, 421 (Ct. App. 1987). Following *Moroney,* the legislature chose to limit its amendatory action to the immunity statute, sec. 146.37, Stats. If the legislature had intended a similar broadening of the

[4]Section 146.37(1), Stats., has since been further amended. Sec. 1836b, 1987 Wis. Act. 27; sec. 403bg, 1987 Wis. Act 399. However, these amendments do not bear upon the issue in this case.

confidentiality statute, sec. 146.38, Stats., it surely would have done so.

In addition, the language of sec. 146.37(1), Stats., reveals that the legislature intended its amendment to apply to that subsection alone. The amendment begins: "Acts and omissions to which *this subsection* applies include." Sec. 13t, 1985 Wis. Act 340 (emphasis added). The primary source of statutory construction is the language of the statute itself, and rules of construction are used only to determine the meaning of an ambiguous statute. *Estate of Boyle,* 134 Wis. 2d at 219, 397 N.W.2d at 126. We find that the amendment to sec. 146.37(1), is not ambiguous and that it applies to that subsection alone.

We conclude that the amendment to sec. 146.37(1), Stats., does not affect *Moroney.* Accordingly, *Moroney* is still good law and governs the facts of this case. Upon this basis, we affirm the trial court's order granting a new trial.

*By the Court.*—Order affirmed.