NORTHWEST WHOLESALE LUMBER, INC., Plaintiff,

v.

Ed ANDERSON, Defendant-Third Party Plaintiff-
Appellant,

Mary ANDERSON, Defendant-Third Party Plaintiff,

v.

Jon P. MORTRUD, Third Party Defendant-Respondent.

Court of Appeals

*No. 94–0319. Submitted on briefs October 6, 1994.—Decided
January 26, 1995.*

(Also reported in 528 N.W.2d 502.)

280

For the defendant-third party plaintiff-appellant the cause was submitted on the briefs of *Joel Bruce Winnig* of *Madison*.

For the third party defendant-respondent the cause was submitted on the brief of *Thomas J. Basting, Sr.* and *Margery M. Tibbetts* of *Brennan, Steil, Basting & MacDougall, S.C.* of *Janesville*.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.   The issues in this case center on the time within which motions for sanctions must be filed under § 814.025, STATS., the "frivolous action" statute, and § 802.05(1)(a), STATS., which requires attorneys and parties signing pleadings or other documents in the course of a lawsuit to first determine that the documents are well grounded in fact and law.

Ed Anderson, a building contractor, built a house for Jon Mortrud. Anderson sued Mortrud for the balance claimed to be due on the contract, and Mortrud interposed various defenses and counterclaims. The case was tried to the court and a memorandum decision in Anderson's favor was filed on April 12, 1993. Judgment was entered on June 15, and Anderson filed a motion for sanctions under §§ 814.025 and 802.05, STATS., on August 9, 1993. The trial court denied the motion as untimely and Anderson appeals.

We conclude that the language of § 814.025(1), STATS., stating that costs shall be awarded if the trial court makes a finding of frivolousness either "during the proceedings" or "upon judgment," requires frivolous-action motions to be filed before the court enters judgment in the case. And while § 802.05, STATS., is silent on the time within which motions must be filed under its terms, we interpret that statute to embody

281

the same requirement. We therefore affirm the trial court's order.

## I.   Section 814.025, STATS.

Insofar as it is pertinent to this appeal, § 814.025(1), STATS., provides as follows:

> If an action . . . commenced or continued by a plaintiff or a counterclaim, defense or cross complaint commenced, used or continued by a defendant *is found, at any time during the proceedings or upon judgment,* to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.

(Emphasis added.)

The trial court, reading the "upon judgment" language to require that such motions be made before judgment is entered, denied Anderson's motion as untimely. Interpretation of a statute is a question of law, which we review independently, owing no deference to the trial court's ruling. *Nelson v. Zeimetz,* 150 Wis. 2d 785, 792, 442 N.W.2d 530, 533 (Ct. App. 1989).

Anderson argues first that because costs had yet to be taxed on the judgment at the time he filed his motion under §§ 814.025 and 802.05, STATS., the "proceedings" continued to at least the time at which costs were taxed and thus his motion was timely.[1] He offers no authority for the assertion, other than a citation to § 814.10, STATS. That statute, however, simply sets

---

[1] We note in this regard that Anderson's post-judgment notice of taxation of costs sought only the general costs allowable under § 814.04, STATS. He did not seek costs or sanctions under either § 814.025 or § 802.05, STATS.

forth the procedure for taxing costs, and Anderson does not explain how its provisions aid his argument.[2]

Anderson next argues that the only reasonable interpretation of § 814.025(1), STATS., is to construe the phrase "upon judgment" to mean within "a reasonable time after judgment." He argues that any other construction would be "absurd" and would frustrate the legislative intent underlying the statute. Specifically, he offers as his "most convincing and irrefutable argument" that the facts of the case compel us to rule his motion timely on pain of contravening the underlying purpose of the statute. He then sets forth the factual basis for his argument.[3] However, he has not provided citations to the record for the asserted facts, and we repeatedly have held that where a party fails to provide such citations, we will not consider the argument. *See, e.g., Tam v. Luk,* 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158, 162 (Ct. App. 1990), where we stated:

---

[2] Anderson has not persuaded us that because general costs of the action allowable under § 814.04, STATS.—a statute not applicable here—are taxed after judgment, we must construe the "upon judgment" language of § 814.025(1), STATS., as reaching beyond the entry of judgment. As we explain below, we do not believe the language chosen by the legislature permits such an interpretation.

[3] Anderson asserts, for example, that he had an unsecured claim against Mortrud prior to the judgment, that Mortrud's "actions . . . from the beginning of the case"—and which "intensified once it became obvious to him he was going to lose"—were "designed to hinder, frustrate, and delay Anderson from being able to collect on his claim, and subsequently on his judgment." He asserts that Mortrud's "strategy" in the case was to "ma[k]e the litigation needlessly expensive" in order to "conceal and encumber his assets."

> [W]e decline to embark on our own search of the record, unguided by references and citations to specific testimony, to look for other evidence to support [the argument]. Section (Rule) 809.19(1)(e), STATS., requires parties' briefs to contain "citations to the . . . parts of the record relied on" and we have held that where a party fails to comply with the rule, "this court will refuse to consider such an argument . . . ." "[I]t is not the duty of this court to sift and glean the record *in extenso* to find facts which will support an [argument]."

(Quoted sources omitted.)

The sum and substance of Anderson's argument is, then, that we should read the limiting language "upon judgment" in the statute as allowing the filing of the motion within a reasonable time after judgment. In our opinion, to read such expanding language into the statute would be not to construe it but to rewrite it.

The aim of statutory construction is to ascertain the intent of the legislature, and our first resort is to the language of the statute itself. *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68, 74 (1992). If the words of the statute convey the legislative intent, that ends our inquiry. We will not look beyond the plain language of a statute to search for other meanings; we will simply apply the language to the case at hand. *Id.*

We believe that the language of § 814.025(1), STATS., conveys the legislature's intent. We assume that the legislature deliberately chooses the language it uses in a statute, and where nontechnical words like "upon" are at issue, it is appropriate to consider recognized dictionary definitions to ascertain their common and ordinary usage. *Ervin v. City of Kenosha*, 159 Wis.

2d 464, 483-84, 464 N.W.2d 654, 662-63 (1991). WEB-STER'S NINTH NEW COLLEGIATE DICTIONARY 1296 (1991), defines "upon" as "on," and while the latter word has several definitions, the one most closely relating to the context in which the word "upon" appears in § 814.025(1), STATS., is that it is "a function word to indicate . . . an instant, action, or occurrence when something begins or is done . . . {news [on] the hour} {cash [on] delivery}. . . ." *Id.* at 823.[4]

---

[4] Anderson argues in his reply brief that some definitions of "upon" and "on" in other dictionaries suggest a broader frame of time. He cites as examples: "immediately or very soon after" (RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. 1987)); "in proximity to, close to, beside, near" (THE SHORTER OXFORD ENGLISH DICTIONARY (1973)); or "used to indicate proximity" (THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (3d ed. 1992)).

Many words have several meanings. As Professor Hurst notes:

> Words do not have meaning in the abstract. They have meaning with reference only to some subject which those choosing the words mean to address. We cannot answer the question, what is the ordinary meaning of the word "ring" without asking a prior question: Is the speaker talking about a signal from a telephone, an ornament to slip on a finger, an arena under a circus tent? Often the difficult problem is to identify the subject the legislature intends to deal with; if we know that, then the ordinary meaning of the words, used with reference to that subject, is likely to present no serious issue.

JAMES W. HURST, DEALING WITH STATUTES 58-59 (1982).

In this case, the context in which the word "upon" is used in the statute is one of time, not space or proximity. And the word is keyed to an event—the entry of judgment—which is a final judicial act that concludes a lawsuit on its legal and factual merits. Considering the subject with which the legislature was dealing, we are satisfied that the "ordinary meaning" of the word "upon" in the context of § 814.025(1), STATS., is one of

We thus read the "upon judgment" language in § 814.025(1), STATS., as meaning what it says: at or upon the time judgment is entered in the case. We are aware that in *In re Estate of Bilsie*, 100 Wis. 2d 342, 356, 302 N.W.2d 508, 516-17 (Ct. App. 1981), we held that the *finding* of frivolousness could be postponed by the court until some time after judgment in order to give the opposing party an opportunity to be heard. There was no issue in *Bilsie*, however, concerning the timeliness of the *filing* of the motion, and we decline to rewrite the statute to allow frivolous-costs motions under § 814.025 to be filed at any time—or even at any "reasonable" time—after the entry of judgment, even though, under *Bilsie*, a court's decision on the motion may in appropriate circumstances be postponed.[5]

contemporaneity with the entry of judgment. It makes no sense to construe the phrase as one of expansion rather than limitation—allowing further proceedings after completion of the final judicial act.

[5] The dissenting opinion cites to the portion of our decision in *Bilsie* just discussed in support of its assertion that, in that case, "[w]e rejected the appellant's interpretation of 'upon judgment' to mean 'at the time of judgment.'" Dissent at 295. As indicated, there was no issue in *Bilsie* concerning the timeliness of the *filing of the motion*, which is, of course, the sole issue in this case.

Additionally, we note that *Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 517 N.W.2d 658 (1994), and *ACLU v. Thompson*, 155 Wis. 2d 442, 455 N.W.2d 268 (Ct. App. 1990), cited in the dissent in support of its assertion that trial courts have "[h]istorically . . . assessed costs and fees under § 814.025, STATS., after judgment," dissent at 296, were cases in which the motions were made *prior* to judgment. *See* APPENDICES AND BRIEFS, 185 Wis. 2d 220 at Respondents' App. A-83, and APPENDICES AND BRIEFS, 155 Wis. 2d 442-504 at Appellants' App. docs. 2 and 3. We acknowledge that courts may, in their discretion,

We conclude that the trial court did not err in ruling that Anderson's motion was not timely filed and dismissing his claim for costs under § 814.025, STATS.

## II. Section 802.05, STATS.

Anderson argues that insofar as his motion was based on § 802.05, STATS., it was timely because that statute does not impose any time limits on either the filing of the motion or the court's decision. According to Anderson, the statute is completely open-ended, allowing the filing of a § 802.05 motion at any time, regardless of whether judgment has been entered, or an appeal has been waived, taken or even completed. We disagree with Anderson's argument.

Section 802.05(1)(a), STATS., provides that an attorney's or a party's signature on a pleading, motion or other paper filed in an action constitutes a certification that, "to the best of [that person's] knowledge, information and belief, formed after reasonable inquiry," the document is well grounded in fact and law and is not being used for harassment or delay, or to increase the cost of litigation. The statute continues: "If the court determines that an attorney or party failed to read or make the determinations required under this subsection before signing [the document], the court may, upon motion or upon its own initiative, impose an appropriate sanction on the person . . . ."

There are no Wisconsin cases discussing the timeliness of motions under § 802.05, STATS., and, as indicated, the statute is silent on the subject. It is,

rule on the motion after judgment is entered. We hold in this case only that Anderson's motion was not timely filed.

however, patterned after Rule 11 of the Federal Rules of Civil Procedure; indeed, it is nearly identical to the federal rule. As a result, federal cases interpreting Rule 11 may guide our interpretation of § 802.05. *Riley v. Isaacson*, 156 Wis. 2d 249, 255, 456 N.W.2d 619, 621 (Ct. App. 1990).

Federal authorities are split in their interpretation of the rule. Some circuits, treating the issues in a Rule 11 motion as "collateral" to those in the case itself, have held that the district court retains jurisdiction to consider a Rule 11 motion after judgment as long as an appeal from the judgment is pending. *See* the cases discussed in *Forcucci v. United States Fidelity & Guar. Co.*, 153 F.R.D. 484 (D. Mass. 1994). Others have held that, in the absence of a local court rule setting a time limitation for Rule 11 motions, "the only time limitation arises out of those equitable considerations that a district judge may weigh in his [or her] discretion." *Hicks v. Southern Md. Health Sys. Agency*, 805 F.2d 1165, 1167 (4th Cir. 1986). Other courts consider that motions for attorney fees are timely if filed within the time in which the party could seek costs, *Montgomery & Assoc., Inc. v. CFTC*, 816 F.2d 783, 785 (D.C. Cir. 1987), although the Seventh Circuit has criticized this rule as "more appropriate for fees awarded as 'part of costs' than for fees under Rule 11, which are awarded as 'sanctions.'" *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987).[6] Finally, in cases

---

[6] Like the Seventh Circuit, the Third Circuit in *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3d Cir. 1988), distinguished between motions for statutory attorney fees and sanctions under Rule 11. The court noted that because requests for statutory attorney fees normally involve "payment for relevant services performed during the whole course of the litigation," there is "good reason to wait until the lawsuit has

where an offending attorney or party voluntarily dismisses an action in order to frustrate the opponent's ability to seek sanctions under Rule 11, some courts have allowed the motion to continue after dismissal. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990).[7] That is not the situation here, however, for Mortrud did not voluntarily withdraw his action in order to defeat Anderson's attempt to seek costs under the applicable statutes. As we have noted, the case proceeded to trial and judgment (and beyond) long before Anderson filed his motion.

Some federal courts have held that "an attorney may not remain idle after a [document] filed in violation of Rule 11 by his [or her] opponent has come to his [or her] attention," but must act promptly to seek sanctions under the rule. *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 879 (5th Cir. 1988). The *Thomas* court noted that "[s]uch 'prompt action helps enhance the credibility of the rule and, by deterring further abuse, achieve[s] its therapeutic purpose.' " *Id.* at 881 (quoting *In re Yagman*, 796 F.2d 1165, 1183 (9th Cir. 1986), *cert. denied*, 484 U.S. 963 (1987)).[8]

been concluded" before considering such motions. *Id.* at 98. The court stated that, in contrast, Rule 11 fees "ordinarily will not include compensation for the entire case, but only for expenses generated by the Rule violation itself." *Id.* at 99.

[7] The rationale makes sense. As the Court noted: "If a litigant could purge his violation of Rule 11 merely by taking a dismissal, he [or she] would lose all incentive to 'stop, think and investigate more carefully before serving and filing papers.' " *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990) (quoted source omitted).

[8] The *Thomas* court also noted that requiring prompt action on documents alleged to violate Rule 11 is necessary to guard against the possibility that "guileful practitioners could profit from the misfortunes and mistakes of fellow professionals" by

In *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 98, 100 (3d Cir. 1988), the court—recognizing "the diminution of judicial efficiency in allowing appeals from fee petitions separate from judgments on the merits," and the desirability of bringing Rule 11 violations to the court's attention in a prompt manner—adopted a "supervisory rule" for all district courts in the circuit that Rule 11 motions be filed prior to the entry of judgment. We are persuaded by the reasoning underlying the *Pensiero* court's rule.

> Promptness in filing [Rule 11] motions will serve not only to foster efficiency, but in many instances will deter further violations of [the] Rule . . . which might otherwise occur during the remainder of the litigation. If a party's action is "abusive" as contemplated by Rule 11, the adversary should be able to realize immediately that an offense has occurred. Seldom should it be necessary to wait for the district court or the court of appeals to rule on the merits of an underlying question of law. If there is doubt how the district court will rule on the challenged pleading or motion, the filing of the paper is unlikely to have violated Rule 11.

*Id*. at 99 (citation omitted). *See also Mellon Bank Corp. v. First Union Real Estate*, 951 F.2d 1399, 1413 (3d Cir. 1991), where the court, holding a Rule 11 request untimely, stated: "If Mellon's complaint contained claims so blatantly without merit that . . . Rule 11 sanctions [were justified], one must wonder why First Union waited so long to seek such sanctions."

---

"remain[ing] idle in the face of possible violations [of Rule 11]" and " 'run[ning] up' exorbitant fees and expenses [in] responding to papers filed in violation of [the] Rule," instead of acting promptly to enforce it. *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 881 (5th Cir. 1988).

Anderson describes his § 802.05, STATS., motion as "alleg[ing] that much of [Mortrud's] defense consisted of filing papers for improper purposes and without proper investigation." By its terms, the motion asserted that the following documents filed by Mortrud violated the rule: "the answer, counterclaim, pre-trial brief, post-trial brief, post-trial reply brief, and other papers filed . . . ."

The record establishes that Mortrud's answer and counterclaim were filed on August 19, 1991. The pre- and post-trial briefs are not part of the record, but we assume that the pre-trial brief was filed before the trial began on June 1, 1992, and that the post-trial briefing was completed as ordered by the court on February 22, 1993. As we have noted, Anderson's motion for sanctions under §§ 814.025 and 802.05, STATS., was not filed until August 9, 1993—four months after the court issued its memorandum decision and nearly two months after the entry of judgment.

It thus appears that: (1) the pleadings to which Anderson objects were filed approximately two years prior to his motion; (2) the pre-trial brief to which he objects was filed fourteen months prior to his motion; and (3) the post-trial brief to which he objects was completed nearly six months prior to his motion.[9]

---

[9] While, as we have noted above, Anderson's motion is open-ended in its "and other papers filed" language, he does not argue that either of the two post-judgment decisions on costs implicated either § 814.025 or § 802.05, STATS. Additionally, he filed an affidavit of his attorney in support of his motion purporting to detail the filings that were being objected to, and all of the documents mentioned were, as indicated above, filed months and years prior to the motion. The only reference in the affidavit to any post-judgment event is an allegation that Anderson learned in the course of supplementary proceedings to enforce

To countenance the filing of motions under § 802.05, STATS., one or two years after the filing of the offensive document—or, in the absence of any justification, even six months after-the-fact—would run counter to the very purpose of the rule as discussed in *Thomas, Pensiero,* and similar cases. Indeed, according to the advisory committee's notes accompanying the 1983 amendments to the Federal Rules of Civil Procedure, "it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter." FED. R. CIV. P. 11 advisory committee note to 1983 amendments. The advisory committee later noted, "Ordinarily the [Rule 11] motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." FED. R. CIV. P. 11 advisory committee note to 1993 amendments.

■

We reject Anderson's argument that there is no time limit for motions under § 802.05, STATS. We share the *Pensiero* court's belief that in order to secure the purposes and benefits of the statute, it must, like § 814.025(1), STATS., be read to require the motions to be filed prior to the entry of judgment in the case. To

---

the judgment that Mortrud had placed mortgages on an automobile and some real estate. There is no suggestion in the affidavit, however, that such acts involved a signed "pleading, motion or other paper" within the meaning of § 802.05, and the purported relationship between the allegation and § 814.025 is counsel's statement that "[t]hese actions are further evidence of the improper purpose of his entire litigation."

We thus are not faced with a claim that violations of either statute occurred after judgment was entered in the action.

construe § 802.05 as Anderson urges would allow such motions to be filed years after final judgment, a construction we consider to be absurd and thus impermissible. *See In re M.J.*, 122 Wis. 2d 525, 532, 362 N.W.2d 190, 194 (Ct. App. 1984) (statutes should not be construed to work absurd results even where the language seems plain).

In so holding, we recognize that there may be situations where a post-judgment motion is claimed to be subject to sanctions within the meaning of § 802.05, STATS. Such a situation would constitute an exception to the pre-judgment filing requirement and the trial court would retain the discretionary power to entertain the motions.[10]

As we have indicated, however, that situation is not claimed to exist in this case. Nothing in his motion to the trial court, or in his arguments in this court, suggests that Anderson did not discover the claimed violations prior to judgment. Indeed, he asserts in his brief that Mortrud's defense had been frivolous "from the beginning of the case," and that he had been "fighting [Mortrud's] frivolous litigation for over two years" before he filed his motion. And, as we also have indicated, the only papers he claims were filed in violation of the rule were filed between six months and two years prior to his motion.

We thus conclude that Anderson's post-judgment motion was untimely under both §§ 814.025 and

---

[10] As we noted above, the cases indicate that a trial court may also have the discretion to consider a motion for sanctions after judgment in cases where the offending party has voluntarily dismissed the action in order to avoid their imposition.

802.05, STATS., and that the trial court properly denied it.[11]

*By the Court.*—Order affirmed.

SUNDBY, J. (*concurring in part; dissenting in part*). The majority concludes that a motion for costs and fees under § 814.025, STATS., or § 802.05(1)(a), STATS., must be filed before judgment. I concur as to § 802.05(1)(a), but not as to § 814.025. I conclude that by enacting § 814.025(4), the legislature intended that claims of frivolousness as to a pleading, motion or other paper would be made as the frivolous document was filed.[1]

---

[11] In his reply brief, Anderson argues for the first time that our decision in *Riley v. Isaacson*, 156 Wis. 2d 249, 456 N.W.2d 619 (Ct. App. 1990), requires reversal of the trial court's order because, according to Anderson, in that case we upheld a motion for sanctions under § 802.05, STATS., filed three weeks after judgment. We reject the argument for two reasons.

First, as indicated, Anderson raises the argument for the first time in his reply brief, and we consistently have held that such arguments are in violation of the Rules of Appellate Procedure and will not be considered. *In re Estate of Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508, 512 (Ct. App. 1981).

Second, while it appears that the motion in *Riley* was filed shortly after the trial court granted a default judgment in the case, and that we eventually affirmed a fee award under § 802.05, STATS., there is nothing in our opinion to indicate that the issue of the motion's timeliness was either argued or considered on appeal.

[1] Section 814.025(4), STATS., provides: "To the extent s. 802.05 is applicable and differs from this section, s. 802.05 applies." 1987 Wis. Act 256, § 16. Section 814.025 would be invoked when a party claimed that the action, proceeding, claim, counterclaim, defense or cross-complaint is frivolous. I do not believe that claims as to the frivolousness of pleadings,

294

We have held that the trial court may make a finding that an action is frivolous under § 814.025(1), STATS., after judgment. *In re Estate of Bilsie*, 100 Wis. 2d 342, 356, 302 N.W.2d 508, 516-17 (Ct. App. 1981). We rejected the appellant's interpretation of "upon judgment" to mean "at the time of judgment." *Id.*, 302 N.W.2d at 516. Section 814.025(1) does not contain a requirement that a party seeking costs and fees under that section must file his or her motion prior to judgment. That requirement is imposed by the majority by judicial construction.

Plainly, our decision herein must be published because it deals with an important question on which there is no precedent. Upon publication, we will have a decision—*Bilsie*—interpreting "upon judgment" to include proceedings after judgment and we will have this decision concluding that "upon judgment" does not mean after judgment.

When the supreme court has prescribed a time within which a motion for costs and fees shall be filed, it has done so expressly. Section 809.25(3)(a), STATS., provides in part: "A motion for costs, fees and attorney fees under this subsection [Frivolous appeals] shall be filed no later than the filing of the respondent's brief or, if a cross-appeal is filed, the cross-respondent's brief."

I next examine the language of §§ 814.025(1) and 802.05(1)(a), STATS., to determine whether the language supports the majority's construction. Section 814.025(1) provides:

> If an action or special proceeding commenced or continued by a plaintiff or a counterclaim, defense or cross complaint commenced, used or continued

motions or other papers may be "saved up" and form the basis for a motion under either § 802.05 or 814.025, STATS.

by a defendant *is found, at any time during the proceedings or upon judgment*, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.

(Emphasis added.)

It cannot be seriously argued that "during the proceedings" does not include entry of judgment. Because the legislature used the disjunctive "or," we must assume that the legislature intended "upon judgment" to mean something other than "during the proceedings." Logically, that can only be after judgment.

Historically, trial courts have assessed costs and fees under § 814.025, STATS., after judgment. *See, e.g., Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 231-33, 517 N.W.2d 658, 662 (1994). In *Stern*, summary judgment was granted as to all the defendants. The plaintiff appealed and we affirmed the judgments. When the record was returned, the circuit court conducted a hearing on the outstanding motions for fees under §§ 814.025 and 802.05(1), STATS. 185 Wis. 2d at 233, 517 N.W.2d at 662.

In *Leske v. Leske*, 185 Wis. 2d 628, 633, 517 N.W.2d 538, 540 (Ct. App. 1994), we concluded that defendant's counterclaim for costs and attorney fees under § 814.025(3)(a), STATS., did not make the order granting partial summary judgment nonfinal for purposes of appeal. We relied on *ACLU v. Thompson*, 155 Wis. 2d 442, 455 N.W.2d 268 (Ct. App. 1990), where we held that the judgment under 42 U.S.C. § 1983 was final despite the fact that plaintiff's request for costs and attorney fees under 42 U.S.C. § 1988 remained unresolved. *Leske*, 185 Wis. 2d at 631, 517 N.W.2d at 539 (citing *ACLU*, 155 Wis. 2d at 446, 455 N.W.2d at 270). We said:

The statute [§ 814.025] does not establish a time limit for a party's request, and a trial court may find frivolousness on its own motion. This court has seen 814.025 requests raised in a counterclaim . . ., in an answer as an affirmative defense, *and by motion filed after the trial court has addressed [the] merits of the litigation*.

*Id.* at 633, 517 N.W.2d at 540 (emphasis added).

Although we may have erred in considering § 814.025, STATS., a fee-shifting statute,[2] the rationale of *ACLU* and *Leske* is not weakened. If anything, the imposition of a sanction for maintaining a frivolous action is more appropriately applied after the case is in and the court is in a better position to decide whether the action is frivolous. In *ACLU*, we stated that awarding attorney fees and costs under 42 U.S.C. § 1988 is comparable to execution on a judgment and confirmation of a foreclosure sale. 155 Wis. 2d at 447, 455 N.W.2d at 270. We stated:

In each instance, the merits of the underlying action have been completely adjudicated by the trial court. An order confirming a sale on execution or a foreclosure sale is appealable as a final order. Each matter is related to but separate from the underlying action. Attorney's fees awardable in a civil rights action under 42 U.S.C. sec. 1988 "are not compensation for the injury giving rise to an action. *Their award is uniquely separable from the cause of action to be proved at trial.*" *White v. New Hampshire Dept. of Empl. Sec.*, 455 U.S. 445, 452 (1982).

*Id.* (emphasis added; citation omitted).

---

[2] *See* Robert D. Sundby, *Awarding Reasonable Attorney Fees Upon Frivolous Claims and Counterclaims Under § 814.025, STATS.*, 53 WIS. B. BULL. 11 (May, 1980) (§ 814.025 imposes a sanction and is not a fee-shifting statute).

An award of costs and attorney fees under § 814.025, STATS., is "uniquely separable" from the cause of action to be tried because the issue on a motion for costs and fees under the statute does not depend upon the trial result; frivolousness is not determined by whether a party's position at trial carries the day but whether the party presents an issue to the court or jury which is "fairly debatable." *See Stern*, 185 Wis. 2d at 247 n.11, 517 N.W.2d at 668. In fact, a party may not know whether he or she has a claim under § 814.025 until the trial is completed.

The majority has not convinced me that there is anything in the law or logic which prevents a party, or the trial judge on his or her own motion, from raising the issue of frivolousness after judgment. It may not be possible in many cases to determine frivolousness until the legal proceedings are completed. Because an early assertion of frivolousness will put the other party on notice, I favor a statute or rule which requires a party to assert that issue at the earliest possible time. However, that is a matter for the legislature or the supreme court.

The majority cites a number of definitions of "upon," including some which support appellant's position. Unfortunately, the majority does not recognize that the phrase "upon judgment" is ambiguous. The majority states: "We thus read the 'upon judgment' language in § 814.025(1), STATS., as meaning what it says: at or upon the time judgment is entered in the case." Majority op. at 286. I believe that construction is necessary.

In construing a statute which is ambiguous, we look first to the language of the statute. *Mallow v. Angove*, 148 Wis. 2d 324, 331, 434 N.W.2d 839, 842 (Ct. App. 1988). I believe that the legislature's reference to

§ 814.04, STATS., points the way to the appropriate construction of the term "upon judgment." Section 814.025(1), STATS., provides that upon a finding of frivolousness, "the court shall award to the successful party *costs determined under s. 814.04* and reasonable attorney fees." (Emphasis added.)

Costs are enumerated in § 814.04, STATS., and are taxed under § 814.10(1), STATS., which provides: "The clerk shall tax *and insert in the judgment* . . . the sum of the costs and disbursements . . . verified by affidavit." (Emphasis added.) Subchapter I, COSTS IN CIVIL ACTIONS AND SPECIAL PROCEEDINGS, does not require that an application for costs be made within a specified time after judgment. I believe the court could refuse to allow costs in the appropriate case if the party entitled thereto has been dilatory. This would be especially true when the item of costs includes reasonable attorney fees under either § 814.025 or 802.05, STATS. The latter statute does not require that a motion for a sanction thereunder be filed during the proceedings. However, that statute does not apply to an action, special proceeding, defense or counterclaim but to "[e]very pleading, motion or other paper." I believe that § 802.05 requires a party or the court to address the frivolousness of pleadings, motions or other papers as they are filed.

Under the federal counterpart of § 802.05, STATS., Rule 11 of the Federal Rules of Civil Procedure,[3] a motion for sanctions under the rule must be made separately from other motions or requests. However, the motion shall not be filed with or presented to the court unless, within twenty-one days after service of the motion, the challenged paper, claim, defense, conten-

---

[3] Rule 11 was amended effective December 1, 1993. FED. R. CIV. P. 11.

tion, allegation, or denial is not withdrawn or appropriately corrected. FED. R. CIV. P. 11(c)(1)A. The experience of the federal courts with former Rule 11 convinced those who used the rule or defended against it that the rule should be a trial remedy. Further, the erring party or attorney should be given the opportunity to correct the error. Thus, it would be inappropriate under that rule to wait until after trial to allege that a pleading, written motion or other paper is frivolous. I believe the tenor of § 802.05 is consonant with Rule 11. Therefore, I agree that a motion for sanctions under § 802.05 should be made when the frivolousness of a pleading, motion or other paper comes to the attention of the party or the court.

Subsection (4) was added to § 814.025, STATS., in 1987. 1987 Wis. Act 256, § 16. That provision provides: "To the extent s. 802.05 is applicable and differs from this section, s. 802.05 applies." I conclude that the legislature intended § 802.05, STATS., to apply during trial and § 814.025 to apply when it is the action, special proceeding, counterclaim, or defense which is frivolous, and not when a particular paper such as an affidavit or a motion is deemed frivolous. It is questionable whether federal cases interpreting Rule 11 prior to its revision remain persuasive.

Because the trial court based its denial of defendant's motion on its interpretation of the statutes, we are presented with an issue of law. In an appropriate case, however, the trial court could exercise its discretion to deny a motion under § 814.025 or 802.05, STATS., because of the litigant's laches.